IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | No. 1:21-cr-236 (MSN) |
| | ) | |
| v. | ) | Count 1 |
| | ) | Narcotics Conspiracy |
| JOHNNY DANG NGO | ) | 21 U.S.C. §§ 841 and 846 |
| (Counts 1-3) | ) | |
| | ) | Count 2 |
| SOPHAY SY | ) | Using, Carrying, and Possessing a Firearm |
| (Count 1) | ) | 18 U.S.C. § 924(c) |
| | ) | |
| MOHAMED IBRAHIM ELDOSOUGI | ) | Count 3 |
| (Counts 1, 4) | ) | Possession of an Unregistered |
| | ) | Destructive Device |
| | ) | 26 U.S.C. §§ 5841, 5861(d), and 5871 |
| | ) | |
| | ) | Count 4 |
| | ) | Obstruction of Justice |
| | ) | 18 U.S.C. § 1503 |
| | ) | |
| | ) | Forfeiture |

**February 2024 Term - At Alexandria**

**SUPERSEDING INDICTMENT**

**Count 1**

**Conspiracy to Distribute Controlled Substances**

THE GRAND JURY CHARGES THAT:

Beginning in or about 2010, the exact date being unknown to the Grand Jury, and

continuing until on or about the date of this Indictment, in the Eastern District of Virginia and

elsewhere, the defendants, JOHNNY DANG NGO (a/k/a Solo), SOPHAY SY (a/k/a Pai), and

MOHAMED IBRAHIM ELDOSOUGI (a/k/a Moe), together with Peter Le (a/k/a Savage, Loki,

and Lorton King), Anthony Nguyen Thanh Le (a/k/a Ant), Joseph Duk-Hyun Lamborn (a/k/a Joe

Yu, Trigga), Tony Minh Le (a/k/a Sneaks, Sneaky, T, Tiger), Sang Thanh Huynh (a/k/a Cinco),

Young Yoo (a/k/a YG), Sascha Amadeus Carlisle (a/k/a Sosa, Wolf), Dane Nicholas Hughes

(a/k/a Dream), Angel Hoang Le, Spencer Pak (a/k/a Pakstacks), Richard Pak (a/k/a Teddy, T,

27), Tasneed Ahmed Chowdhury (a/k/a Taz, Tas), Joshua Andrew Miliaresis, Tyler Thang Le

(a/k/a TY), David Thai Nguyen (a/k/a DD), Tyler Pranompi Sonesamay (a/k/a Son), Zachary

Cassella (a/k/a Roach, Dark), Khalil Yasin (a/k/a Shino), Kyu Wa Hong (a/k/a Alex Hoang,

Starter), Abdullah Sayf, Fahad Fakrudin Abdulkadir, Brandon Sobotta, Kevin Michael Aagesen

(a/k/a Henny), Soung Park (a/k/a Bruce Lee), Zu Hun Chang (a/k/a Monster),   Bradley Sullivan,

Douglas Martinez, Boubacar Sow, Aaron Yohannes (a/k/a Pubes), Keira Ta, and others, did

unlawfully, knowingly, and intentionally combine, conspire, confederate, and agree with each

other and with other persons, both known and unknown to the grand jury, to commit the

following offenses:

      a.     to unlawfully, knowingly, and intentionally distribute five kilograms or more of a

mixture and substance containing of a detectable amount of cocaine, a Schedule II controlled

substance, in violation of Title 21, United States Code, Section 841(a)(1) and (2);

      b.     to unlawfully, knowingly, and intentionally distribute one thousand kilograms or

more of marijuana, a Schedule I controlled substance, in violation of Title 21, United States

Code, Section 841(a)(1) and (2);

      c.     to unlawfully, knowingly, and intentionally distribute a mixture and substance

containing a detectable amount of tetrahydrocannabinol (THC), a Schedule I controlled

substance, in violation of Title 21, United States Code, Section 841(a)(1) and (2);

d.     to unlawfully, knowingly, and intentionally distribute a mixture and substance containing a detectable amount of alprazolam (Xanax), a Schedule IV controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and (2);

e.     to unlawfully, knowingly, and intentionally distribute a mixture and substance containing a detectable amount of 3,4-Methylenedioxy methamphetamine (a/k/a MDMA, ecstasy, molly), a Schedule I controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and (2);

f.     to unlawfully, knowingly, and intentionally distribute a mixture and substance containing a detectable amount of lysergic acid diethylamide (a/k/a LSD), a Schedule I controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and (2);

g.     to unlawfully knowingly, and intentionally manufacture, distribute, and possess with the intent to manufacture and distribute 1,000 or more marijuana plants, in violation of Title 21, United States Code, Section 841(a)(1) and (2);

h.     to unlawfully, knowingly, and intentionally lease, rent, use, and maintain a place for the purpose of distributing and using controlled substances, in violation of Title 21, United States Code, Section 856;

i.     to unlawfully, knowingly, and intentionally distribute controlled substances to persons under the age of twenty-one, in violation of Title 21, United States Code, Section 859;

j.     to unlawfully, knowingly, and intentionally distribute controlled substances within 1,000 feet of a public school, in violation of Title 21, United States Code, Section 860;

k.     to unlawfully, knowingly, and intentionally employ, hire, use, persuade, induce, and entice persons under 18 years of age to violate the provisions of Title 21 of the United States Code, including Title 21, United States Code, Sections 841, 856, 859, and 860;

3

l.       to unlawfully, knowingly, and intentionally employ, hire, use, persuade, induce, and entice persons under 18 years of age to assist in avoiding detection for any such offense, all in violation of Title 21, United States Code, Section 861; and

m.       to unlawfully, knowingly, and intentionally sell drug paraphernalia and to use the mails and other facilities of interstate commerce to transport drug paraphernalia, that is, devices for use in compounding, converting, concealing, producing, processing, preparing, ingesting, inhaling, or otherwise introducing into the human body unlawful controlled substances, including THC and marijuana and products derived from marijuana, in violation of Title 21, United States Code, Section 863.

### General Allegations

1.       At all times relevant to this indictment, the Reccless Tigers, including its affiliated entities, was a violent street gang and drug trafficking conspiracy operating in the Eastern District of Virginia and elsewhere.   The defendants, JOHNNY DANG NGO, SOPHAY SY, and MOHAMED IBRAHIM ELDOSOUGI, were members of this conspiracy.

2.       The Reccless Tigers were formed in or about 2011.   The gang grew out of smaller street gangs operating primarily in Centreville, Virginia, including the Young Korean Loks (a/k/a YKL), Korean Dragon Crew (a/k/a KDC), and Sons of Gong (a/k/a SOG).   As the Reccless Tigers grew and evolved, it developed a close relationship with the Asian Boyz (a/k/a ABZ), and, specifically, the West Side Asian Boyz, a Los Angeles, California, street gang.   The Reccless Tigers also formed the affiliated entities Club Tiger, Tiger Side, and Lady Tigers (a/k/a Lady Ts).

3.       The Reccless Tigers and its affiliated entities trafficked in illegal narcotics, particularly marijuana and marijuana products, such as vape pens and edibles containing THC.

4

The gang also distributed cocaine, prescription medications, ecstasy (also known as molly), LSD, ketamine, and heroin.   The Reccless Tigers had numerous drug suppliers, and many of the drugs distributed by the gang were transported or shipped from California to Northern Virginia. Money generated from these sales was sent to California through bank deposits and withdrawals, wire transfers, and vehicles.   Gang members invested in and helped operate a marijuana grow operation of more than 1,000 marijuana plants near Hayfork, California, which they called "the farm."

4.      The Reccless Tigers openly marketed the gang and its "brand" through social media postings, house parties, product labels, t-shirts, jewelry, clothing, and business cards. Gang members adopted unique gang signs, which they displayed to show their membership in, and allegiance to, the gang.   Many gang members wore tiger-themed tattoos and tattoos with the gang's initials, RT.   The gang became well known throughout secondary schools in Northern Virginia as a source of marijuana, vape pens containing THC, and other drugs, and a large number of the gang's retail distributers and drug customers were middle school, high school, and college students.

5.      The Reccless Tigers adopted many traditional gang customs and rules.   Gang members were required to complete an initiation process and were "jumped in" prior to joining the gang.   This involved being beaten by a number of other gang members.   Members were expected to participate in fights on behalf of the gang.   If a gang member failed to participate, the member was punished.   Gang members were also expected to go on "missions," which typically involved violence.

6.      The Reccless Tigers used violence and threats of violence to promote and protect the gang, its drug trafficking conspiracy, and its reputation and status.   The gang used violence

and threats of violence to command respect and obedience from its members and associates and to enforce gang rules, collect debts, and intimidate anyone perceived to be a threat to the gang. Gang members were assaulted by other gang members when they broke rules or offended the gang's leadership. The gang engaged in frequent fights with rival local gangs, which sometimes resulted in larger melees involving dozens of gang members and exchanges of gunfire. Drug debts frequently spawned violence and threats of violence. When threats and assaults proved ineffective in collecting drug debts, gang members escalated the violence to fire-bombing attacks (*i.e.*, Molotov cocktails) of residences.

7.      Many of the Reccless Tigers used, carried, and possessed firearms, including revolvers, semi-automatic pistols, shotguns, and assault-style rifles. They frequently posted photographs of themselves on their social media accounts possessing, carrying, and brandishing firearms. Members of the gang used, carried, and possessed firearms to defend themselves and the gang, intimidate others, and protect their drug business and drug proceeds.

8.      The Reccless Tigers attempted to obstruct and obstructed investigations by law enforcement into its illegal activities. Gang members were encouraged to lie and lied to investigators when questioned about the gang. Gang members attempted to destroy and destroyed evidence of their criminal activities to thwart the investigation and prosecution of gang members. The Reccless Tigers threatened potential witnesses with physical injury and death if they cooperated with law enforcement and retaliated with violence, including murder, against persons suspected of cooperating with government authorities.

**The Purposes, Ways, Manner, and Means of the Conspiracy**

10.     The purposes of the conspiracy included the following:

a.      Enriching the members and associates of the enterprise through the distribution and sale of illegal narcotics;

b.      Enriching, preserving, expanding, and protecting the power, profits, reputation, and prestige of the conspiracy through the use and threatened use of violence, including murder, assaults, assaults with dangerous weapons, arson, kidnapping, robbery, and extortion;

c.      Promoting and enhancing the conspiracy and the activities of its co-conspirators through social events and social media;

d.      Confronting and retaliating against rival gangs through the use of violence and threats of violence;

e.      Keeping victims and potential victims, including drug customers, in fear of the conspiracy and its members and associates through violence, threats of violence, and intimidation;

f.      Hindering and obstructing efforts of law enforcement to identify, apprehend, and successfully prosecute offending gang members and co-conspirators; and

g.      Obtaining, possessing, sharing, using, and carrying firearms and other weapons to preserve, protect, and further the purposes of the conspiracy.

11.     Among the means and methods by which the members and associates of the conspiracy, including the defendants, agreed to conduct and participate in the conduct of the affairs of the conspiracy, which included, but were not limited to, the following:

7

a.     Members of the conspiracy committed and agreed to commit criminal acts for the benefit of the conspiracy, including murder, assault, robbery, arson, kidnapping, extortion, and drug trafficking;

b.     Members of the conspiracy obtained and distributed controlled substances;

c.     Members of the conspiracy financed and operated marijuana grow operations in California for the purpose of distributing marijuana and THC-based products in the Eastern District of Virginia and elsewhere;

d.     Members of the conspiracy used cellphones and messaging applications, including encrypted messaging applications, to communicate with co-conspirators and others to coordinate drug trafficking and other criminal activities;

e.     Members of the conspiracy promoted their drug trafficking activities through the use of social media websites by posting videos and photographs of illegal drugs, cash, firearms, gang jump-ins, gang social events, and fights with rival gangs;

f.     Members of the conspiracy adopted hand gang signs and wore gang-themed tattoos and clothing to signify membership in the gang and to enhance the reputation and prestige of the conspiracy;

g.     Members and associates of the conspiracy used intimidation, violence, and threats of violence to preserve, expand, and protect the conspiracy its criminal activities; and members of the conspiracy also used intimidation, violence, and threats of violence to promote and enhance their own prestige, reputation, and standing within the conspiracy.

h.     Members of the conspiracy used intimidation, violence, and threats of violence, including assaults, arson, and extortion, to collect drug debts;

8

i.       Members of the conspiracy used intimidation, violence, and threats of violence against rival gangs, rival drug dealers, and others perceived to be a threat to the conspiracy;

j.       Members of the conspiracy used intimidation, violence, and threats of violence to protect the enterprise from detection, apprehension, and prosecution by law enforcement; and members of the conspiracy used intimidation, violence, and threats of violence, including murder, assaults, arson, and extortion to dissuade potential witnesses from notifying or cooperating with authorities and to retaliate against witnesses believed to be cooperating with authorities.

k.       Members of the conspiracy attempted to obstruct and obstructed law enforcement investigations of the conspiracy by attempting to destroy and destroying evidence of their criminal activities;

l.       Members of the conspiracy obtained, used, carried, and possessed firearms and other weapons to protect the conspiracy and to further its unlawful activities;

m.       Members of the conspiracy used banks and online money transfer services, couriers, and other means to collect drug money from customers, pay drug suppliers, and move money from the Eastern District of Virginia and elsewhere to other locations to acquire drugs and finance the conspiracy's illegal activities;

n.       members of the conspiracy leased apartments in the Eastern District of Virginia and elsewhere to store, distribute, and use narcotics and to collect money from drug sales; and members of the conspiracy leased Airbnb properties in Virginia, Washington, D.C., Maryland, and elsewhere to store, distribute, and use narcotics and to host social events and promote the enterprise.

All in violation of Title 21, United States Code, Section 846

9

**Count 2**

**Using, Carrying, and Possessing a Firearm during a Drug Trafficking Offense**

THE GRAND JURY FURTHER CHARGES THAT:

On or about April 17, 2017, in Annandale, Virginia, in the Eastern District of Virginia, the defendant, JOHNNY DANG NGO (a/k/a Solo), did unlawfully and knowingly use, carry, and brandish a firearm, that is, a semi-automatic handgun, during and in relation to a drug trafficking crime, and did unlawfully and knowingly possess and brandish said firearm in furtherance of a drug trafficking crime, that is, the conspiracy to distribute controlled substances, as set forth and charged in Count 1 of this indictment, which is re-alleged and incorporated herein by reference.

All in violation of Title 18, United States Code, Section 924(c)

## Count 3

### Possessing an Unregistered Destructive Device

THE GRAND JURY FURTHER CHARGES THAT:

On or about November 3, 2016, in Annandale, Virginia, in the Eastern District of

Virginia, the defendant, JOHNNY DANG NGO (a/k/a Solo), did unlawfully and knowingly

possess a firearm not registered to him in the National Firearms Registration and Transfer

Record, to wit, a Molotov cocktail, which is a destructive device pursuant to Title 26, United

States Code, Section 5845(a)(8) and (f).

In violation of Title 26, United States Code, Sections 5861(d), 5871, and 5841

**Count 4**

**Obstruction of Justice**

THE GRAND JURY FURTHER CHARGES THAT:

On or about February 16, 2019, in Fairfax County, Virginia, in the Eastern District of Virginia, the defendant, MOHAMED IBRAHIM ELDOSOUGI (a/k/a Moe), did corruptly influence, obstruct and impede or endeavor to influence, obstruct and impede the due administration of justice in *United States v. Peter Le et al.*, No. 1:19-mj-91, a criminal case then pending before the United States District Court for the Eastern District of Virginia, by destroying and attempting to destroy evidence, including a firearm, material to that case.

In violation of Title 18, United States Code, Section 1503

## FORFEITURE

THE GRAND JURY FURTHER ALLEGES THAT:

As a result of committing the offense alleged in Count 1 of this indictment, the defendant, JOHNNY DANG NGO (a/k/a Solo), SOPHAY SY (a/k/a Pai), and MOHAMED IBRAHIM ELDOSOUGI (a/k/a Moe), shall forfeit to the United States, pursuant to Title 21, United States Code, Section 853, any and all property constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of said offense and any and all property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, said offense, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses that the defendant personally obtained.

As a result of committing the offense charged in Count 2 of this indictment, the defendant, JOHNNY DANG NGO (a/k/a Solo), shall forfeit to the United States, pursuant to 18 U.S.C. § 924(d) and 28 U.S.C. § 2461(c), any firearm or ammunition involved in, or used in, any knowing commission of the offense.

### Substitute Assets

If any of the property described above as subject to forfeiture, as a result of any act or omission of the defendant:

a.  cannot be located upon the exercise of due diligence;

b.  has been transferred or sold to, or deposited with, a third person;

c.  has been placed beyond the jurisdiction of the Court;

d.  has been substantially diminished in value; or

e.  has been commingled with other property which cannot be subdivided without difficulty;

13

it is the intent of the United States, pursuant to Title 21 United States Code, Section 853(p), and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendant up to the value of the above forfeitable property.

All pursuant to Title 21, United States Code, Section 853
and Title 28, United States Code, Section 2461.

A TRUE BILL:

Pursuant to the E-Government Act,
the original . . . has been filed
under seal . . . 'erk's Office.

_____
FOREPERSON

Jessica D. Aber
United States Attorney

By: _____
James L. Trump
Assistant United States Attorney